UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIRK PATRICK SEVERIN                                CIVIL ACTION

VERSUS                                              NO. 06-2780

WARDEN BILL HUNTER ET AL.                           SECTION "F" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Kirk Patrick Severin, was a prisoner who was incarcerated in the Hunt Correctional Center in St. Gabriel, Louisiana at the time of filing this complaint.  He filed his complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Prison ("OPP") Warden Bill Hunter and Warden Glen Jambon of the Jefferson Parish Correctional Center.  Severin alleges that he was exposed to unconstitutionally unsanitary conditions and was not provided with adequate medical care while he was confined in a temporary detention facility located at the former Greyhound bus station in New Orleans during the aftermath of Hurricane Katrina.  He seeks damages.  Record Doc. No. 1 (Complaint at ¶ V).

On September 12, 2006, I conducted a telephone conference in this matter.  Participating were plaintiff pro se and Tim Richardson, counsel for defendant, Warden

Hunter.  Plaintiff was sworn and testified for all purposes permitted by <u>Spears v.</u>
<u>McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Plaintiff testified that he is currently incarcerated in the Hunt Correctional Center
in St. Gabriel, Louisiana, based on his conviction in Jefferson Parish on May 11, 2006
on a charge of possession of cocaine.  He stated that he is serving a sentence of three
years in prison.

Severin confirmed that the claims he makes in this case arise from a period of time
during which he was incarcerated in the temporary, rudimentary prison that was
established at the former Greyhound bus station in New Orleans in the immediate
aftermath of Hurricane Katrina, which struck the New Orleans metropolitan area with
catastrophic results on August 29, 2005.  He stated that he was arrested on October 3,
2005, for curfew violations and based upon an attachment from Jefferson Parish for the
charge on which he was ultimately convicted, and was placed in the bus station holding
facility that day.  Severin said that he was arrested in the Algiers neighborhood of New
Orleans by both New Orleans police officers and Jefferson Parish sheriff's deputies for
violation of the curfew that was in effect in New Orleans after the hurricane.  He testified
that the attachment had been issued on the basis that he had missed a court appearance
in Jefferson Parish on the drug charge for which he was later convicted, but, he said,

"I didn't, it was a spurious attachment because an attachment didn't come out till February 13, 2006."

Severin testified that after he was arrested he was placed in a barbed wired area of the old bus station in New Orleans, where detainees were being held after the storm. Asked if he understood why he was held there instead of at OPP, he acknowledged that "it was an emergency detention center due to the indelible impression of Hurricane Katrina," including the flooding of OPP "and the destruction that took place."  He said he was aware that OPP had been closed at that time.  He asserted, however, that if he was being held on a Jefferson Parish attachment, he should have been taken to the Jefferson Parish jail, which he claimed was open "for booking and bonding," instead of being sent to Hunt Correctional Center in St. Gabriel after only three days at the bus station facility.

Severin conceded that his understanding that the Jefferson Parish jail was open at that time was not based on any personal knowledge, but on hearsay statements of other prisoners who had told him that the jail was open "for booking and bonding, not for housing prisoners, but they did have a detainer tank at the Gretna lockup."  He acknowledged that he was not brought to the Jefferson Parish jail immediately after his arrest.

As to his claim that he was exposed to unconstitutional conditions of confinement at the bus station facility in New Orleans, Severin testified that those conditions included

3

"being directly put on the concrete on the ground with unknown germs, chemicals, hazardous waste, bird waste . . . the unsanitary cleaning of the Port-o-Johns.  They didn't have any doors on it, not that it needed it, but they were totally full with human feces and urination smell was everywhere."  He alleged that the guards outside the wire had cots and mattresses or sleeping bags, while the detainees did not, and he called that "totally unwarranted."

Asked what he meant by the allegations in his written submissions that he was subjected to physical abuse and corporal punishment, plaintiff testified that "the physical abuse is when you ask for things maybe pertaining to eating or washing or cleaning, . . . [the guards] gotta tug on you, they gotta push you."  He alleged that one officer punched him in the face "because I spoke my mind."  He said he had asked the officer a question and the officer ignored him, so he "got a little emotional," verbally confronting the officer, and the guard told him to get out of his face.  Plaintiff said that he was stressed, upset and a little afraid because of his detention and the conditions and that his stress manifested itself in his dealings with the officers.  He said the guards included New Orleans police officers, New York police officers and Louisiana Department of Corrections guards, but he could not identify the officer who allegedly struck him.

Plaintiff testified that he sustained an insect bite because of the conditions in which he was held at the bus station, specifically from sleeping on the ground without

4

any mattress or blanket.  He stated that he was bitten by a "big ant," perhaps also sometimes called a "cow ant."  Severin said he was bitten on the knee cap and "the leg swoll [sic] to where I actually couldn't bend it." He said that he had been taken to the bus station the afternoon of October 3, 2005 and that the ant bite occurred that night.

Severin confirmed the allegation in his written submissions that he spent about three days in the bus station.  He said he was taken to Hunt Correctional Center on October 6, 2005.  He alleged that he received no medical attention for his ant bite during the three days while he was in the bus station. Asked what other physical injuries he suffered in addition to the ant bite from his stay in the bus station, Severin testified that "just being on the ground, your body hurts, it's cold, you know, hard conditions of the night," so that the other physical injuries he experienced were soreness and cold.[1]

Severin said he was transported to Hunt by bus.  He stated that his clothes were burned and he was permitted to have a shower when he arrived at Hunt.  He testified that he asked for medical treatment there because he thought he had a "slight fever," but the deputy who responded to his request said that he did not have a fever and that his insect bite did not look serious.

---

[1]According to weather history records for New Orleans for October 3 through October 6, 2005, the lowest nighttime temperatures ranged from 70 to 71.6 degrees Fahrenheit, while the daily high temperatures ranged from 90 degrees to 91.4 degrees Fahrenheit.  These records are publicly available at http://www.almanac.com/weatherhistory.

Plaintiff said that he was first seen by a doctor at Hunt for his insect bite on October 9 or 10, 2005, about six or seven days after he had been bitten.  He testified that the doctor told him it was neither a spider bite nor a staph infection.  He said the doctor provided him with antibiotic pills and 800 mg. of ibuprofen.  He stated that he took the antibiotic pills for 11 or 12 days and that the infection and swelling began to resolve, although he said he still suffers with some pain.

Severin said that he spent almost four months in Hunt and saw doctors a few other times while there.  He testified that his bandage was changed "on a daily basis" for about two months, which also involved administration of an antibiotic ointment.  He said that, "as it was starting to heal and go down, . . . I complained a few other times but by then I was on my way to St. Charles Parish" jail.  He added that, after he was transferred from Hunt to the St. Charles Parish jail, he began to experience tightness, stiffness and occasional sensitivity in his knee, which he said is also scarred.

Asked about the two defendants named in his lawsuit, Severin explained that Hunter was warden of OPP and Jambon was warden of the Jefferson Parish jail.  He assumed that both had some sort of supervisory authority over the temporary facility at the bus station, which is why he named them as defendants.  He said that he also intends to sue Burl Cain, the warden of the state penitentiary at Angola, and Marlin Gusman, the

Orleans Parish Criminal Sheriff, because he believes that they also had some responsibility for the temporary jail at the bus station.

Severin testified that he wishes to assert a claim for "wrongful confinement" because he was denied access to the courts for the period of time before his conviction. He said he was being held "for reasons unknown." Plaintiff alleged that he was not being held for anything arising in Orleans Parish and that the Jefferson Parish attachment for the drug charges for which he was ultimately convicted did not actually issue until February 2006. He conceded, however, that he had not presented to the Louisiana Supreme Court any of his claims of "wrongful confinement" prior to his conviction.

## ANALYSIS

### I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Haddix v. Kerss, No. 04-41636, 2006 WL 2861110, at *2 (5th Cir. Oct. 9, 2006); Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon tangible items as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly

8

identify and authenticate documents." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.

9

Plaintiff's complaint, as explained by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[2]  In addition, the habeas corpus aspects of plaintiff's claims must be dismissed without prejudice because plaintiff has brought the claims in the wrong proceeding and has not exhausted his state court remedies.

II.   <u>CONDITIONS OF CONFINEMENT</u>

Plaintiff asserts that he was subjected to unconstitutionally unsanitary conditions, including sleeping on the concrete "with unknown germs, chemicals, hazardous waste, bird waste" and without any cots, mattresses or sleeping bags, while incarcerated at the temporary jail at the Greyhound bus station for three days in the aftermath of Hurricane Katrina.  He also complained of the unsanitary condition of the portable toilet facilities and an insect bite.

Severin was a pretrial detainee for the time period about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999); <u>Hamilton v. Lyons</u>, 74 F.3d 99, 104 n.3 (5th Cir. 1996); <u>Hare</u>, 74 F.3d at 650.  In <u>Hare</u>, the Fifth Circuit held

---

[2] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Id.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. On the contrary, in this case, "'the complained-of harm is a particular act or omission of one or more officials,'" Olabisiomotosho, 185 F.3d at 526 (quoting Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997)), created by the necessities of the emergency situation created by Hurricane Katrina, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.

As to Severin's particular claims, his allegations do not constitute violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for

constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other citations omitted)) (emphasis added).   "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

In the instant case, the "deliberate indifference" standard applies because all of plaintiff's complaints concerning the conditions relate to jail officials' episodic acts or omissions, and no challenge is made to "the general conditions and restrictions of [plaintiff's] confinement, knowingly imposed." Hamilton, 74 F.3d at 104 n.3.  Thus, Severin must allege facts sufficient to establish that any defendant knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

Plaintiff fails to allege any such facts when he complains about temporary conditions, including three days of sleeping on the concrete without any cots, mattresses or sleeping bags in the allegedly "cold" night of the first week of October 2005 in New Orleans and the smelly condition of the portable toilet facilities.  These allegations assert nothing more than a temporary discomfort that is insufficient to state a claim of constitutional dimension.  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982).  Serving time in prison "is not a guarantee that one will be safe from life's occasional

13

inconveniences." Id. Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

Although the conditions plaintiff described may be unpleasant, he has failed to allege either deprivations so extreme that they violate the Constitution or sufficiently serious harm resulting from these problems to meet the requirements of Farmer, and this claim does not rise to the level of constitutional violation.

A short-term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation. Davis, 157 F.3d at 1006; Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Whitnack, 16 F.3d at 958. None of plaintiff's allegations about his three-day stay in the bus terminal establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed

14

for four days to raw sewage from overflowed toilet in his cell)); Eady v. Head, No.

CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) (Nowak,

M.J.) ("Going without a shower and being exposed to the foul smell of a backed-up

shower for two days on two separate occasions does not show deliberate indifference to

Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of

the Eighth Amendment.").

It also cannot be said that Severin "face[d] a substantial risk of serious harm" in

the constitutional sense from the temporary lack of a mattress for three days.  Although

the Fifth Circuit has not yet addressed this question, the Sixth Circuit at least once and

the Eighth Circuit repeatedly has held in recent years that deprivation of bedding for a

limited period of time is not per se unconstitutional.  See Grissom v. Davis, No. 02-1916,

2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or

blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer

serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996)

(sleeping without mattress or blanket for four days on a concrete slab in cell located ten

feet from exterior door during winter did not deny plaintiff the minimal civilized

measures of life's necessities); Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995)

(placement in strip cell without clothes, running water, mattress or blanket for two days

was not unconstitutional when there was no evidence that inmate suffered any injury or

adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional).  Provision of bedding falls within those matters committed to prison administrators' sound discretion.  Kot v. Matty, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. Nov. 15, 1991), aff'd, 980 F.2d 723 (3d Cir. 1992).

Although former Chief Judge Little of the Western District of Louisiana has declared that "[a] mattress is a basic human right, which must be provided to a detainee," the Fifth Circuit has not adopted his position and the cases that he cited to support that far-reaching proposition do not, on closer examination, mandate that conclusion. Oladipupo v. Austin, 104 F. Supp. 2d 626, 639 (W.D. La. 2000) (Little, C.J.) ("Oladipupo I") (citing Thompson v. City of Los Angeles, 885 F.2d 1439, 1449 (9th Cir. 1989) ("valid Fourteenth Amendment claim where pretrial detainee forced to sleep on the floor for two nights"); Lyons v. Powell, 838 F.2d 28, 31 (1st Cir. 1988) ("pretrial detainee's allegation that he was forced to sleep on floor mattress sufficient condition to show deprivation of due process"); Anela v. Wildwood, 790 F.2d 1063, 1067 (3d Cir. 1986) ("allegation that City failed to provide bed or mattress to pretrial detainees states actionable constitutional claim"); Lareau v. Manson, 651 F.2d 96, 105 (2d Cir. 1981)

16

("prison's use of floor mattresses for pretrial detainees unconstitutional 'without regard to the number of days for which a prisoner is so confined'"); <u>Martino v. Carey</u>, 563 F. Supp. 984, 1002 (D. Or. 1983) ("fact that jail overcrowding forced some pretrial detainees to sleep directly on floor contributed to finding that overcrowded conditions violated detainees' Fourteenth Amendment rights"); <u>Vazquez v. Gray</u>, 523 F. Supp. 1359, 1365 (S.D.N.Y. 1981) ("use of floor mattresses for pretrial detainees unconstitutional")); <u>Oladipupo v. Austin</u>, 104 F. Supp. 2d 654, 659 (W.D. La. 2000) (Little, C.J.) ("<u>Oladipupo II</u>") (citing the same cases).

First, none of the cases cited by Chief Judge Little presents a factual situation akin to Severin's. Second, those cases applied outdated legal standards different from the current "deliberate indifference" standard for an episodic omission by jail officials. Thus, I find the Eighth Circuit's reasoning and holdings in its recent cases more persuasive in the instant case than the <u>Oladipupo</u> decisions and cases cited therein.

Living in conditions such as those described by Severin may be an inconvenience, but it was an inconvenience necessitated by Hurricane Katrina and the need in that emergency situation to apprehend and detain curfew violators and other suspects. Severin has not alleged sufficiently serious harm resulting from the temporary three-day conditions to satisfy either the objective or subjective components required to state a

claim for unconstitutional conditions of confinement.  Thus, plaintiff has not alleged a violation of a clearly established constitutional right in this regard.

In two cases, the Fifth Circuit has held that virtually permanent conditions of cells that contained excrement and other filth violate the separate but instructive Eighth Amendment standard.  In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'"  Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)).  The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  Id. (quoting Wilson, 501 U.S. at 304).

18

In the instant case, Severin was confined in the temporary bus station holding facility for only three days under the emergency conditions caused by Hurricane Katrina. Because his case clearly falls within the ambit of the Fifth Circuit's holding in Davis, id. at 1006, that a three-day confinement in such a cell is not unconstitutional, this claim advances a legally frivolous argument and fails to state a claim for relief under Section 1983.

III.   MEDICAL CARE

Severin was a pretrial detainee during the time period about which he complains about his medical care.  Before the Fifth Circuit's decision in Hare, it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish, 441 U.S. 520, 539 (1979); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650.  The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to apply, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u> at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in <u>Estelle</u>, 429 U.S. at 104, will apply.  <u>Hare</u>, 74 F.3d at 645.

In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes

conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.  The Farmer definition applies to Eighth Amendment medical claims.  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

21

inference." <u>Id.</u> at 837.  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."  <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard</u>, 114 F.3d at 551 (citing <u>Board of County Commissioners</u>, 520 U.S. at 410 (additional citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291.

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue in this case.  Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that <u>defendants knew he faced a substantial risk of serious harm and disregarded that risk</u> by failing to take reasonable measures to abate it.  In this case, Severin fails completely to allege facts sufficient to establish deliberate indifference.

Plaintiff's testimony negates any inference that defendants acted with deliberate indifference to serious medical needs.  Initially, it cannot be concluded that the condition

22

Severin described, an ant bite, presented a serious medical need that posed a substantial risk of harm during his brief incarceration at the bus station.  See Vaughn v. City of Lebanon, 18 Fed. Appx. 252, 2001 WL 966279, at *20 (6th Cir. 2001) (no serious medical need when treating physicians analogized plaintiff's pepper-spray-related symptoms to a case of poison ivy and when his cuts, bruises and abrasions from struggle were visible but not permanent); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen, bleeding wrists from handcuffs that were too tight do not constitute serious medical need); Maxwell v. Conn, 893 F.2d 1395, 1990 WL 2774, at *3 (6th Cir. 1990) (two-day delay in seeing doctor for back pain after slip and fall incident and for abscess pain did not implicate serious medical needs); Martin v. Tyson, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (delay in treating tooth ache and ear infection not sufficiently serious); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (sliver of glass in detainee's palm and minor cuts and bruises were not serious injury); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).

Severin's testimony about his medical problem did not identify any serious risks of harm resulting from the alleged delay in treatment.  He testified that he thought he had a "slight fever" when he was transported to Hunt, but that the deputy who responded to his request said that he did not have a fever and his insect bite did not look serious. Thus,

his condition does not rise to the level of a serious medical need for purposes of constitutional analysis.

Even assuming that plaintiff's medical condition resulting from an ant bite was a serious condition for constitutional purposes, the facts alleged in his complaint, as amended by his testimony, negate any inference of deliberate indifference by jail officials. Although Severin has alleged delay in receiving medical care and has expressed dissatisfaction with the speed and effectiveness of his treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983. He did not testify that he brought the ant bite to the attention of any jail official or requested medical care while at the bus station holding facility for only three days. When he was examined upon his arrival at Hunt from the bus station, he was told that he had no fever and his insect bite was not serious.

First, mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson, 910 F.2d at 284. Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. The delay about which Severin complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See Hill v.

24

<u>Dekalb Reg'l Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994) (citing

<u>Monmouth County v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in

medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the

medical need is serious.'")); <u>Wesson</u>, 910 F.2d at 283-84 (minor delay in escorting

injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding

cannot be construed as deliberate indifference to serious medical needs).  No such

permanent loss resulting from delay has been alleged in this case.

Contentions like Severin's that amount to a mere disagreement with the speed,

quality or extent of medical treatment or even negligence do not give rise to a Section

1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the

level of a constitutional violation, malpractice or negligent care does not."  <u>Stewart v.

Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of

prisoner's serious medical condition, which ultimately resulted in death, does <u>not</u>

constitute deliberate indifference, even if treatment was negligently administered); <u>see

also</u> <u>Norton</u>, 122 F.3d at 291-92; <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991);

<u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical

services provided cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284

(allegations establishing provision of medical treatment found inconsistent with inference

of deliberate indifference); <u>Williams v. Browning</u>, No. V-03-157, 2006 WL 83433, at *1,

*3 (S.D. Tex. Jan. 11, 2006) (Rainey, J.) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not allege that he suffered any substantial harm from the delay, failed to state a claim for deliberate indifference).

Second, plaintiff has not even alleged that defendants knew about his ant bite while he was being held at the bus station and willfully failed to provide him with treatment. In the absence of any knowledge of plaintiff's condition, defendants could not have been deliberately indifferent to his serious medical need and they are entitled to qualified immunity.

As in other reported decisions concerning prisoners complaining about insect bites, this case must be dismissed. Crow v. Cotten, No. 302CV745-M, 2002 WL 31697730, at *2 (N.D. Tex. Nov. 27, 2002); Mack v. Prison Health Servs., 2002 WL 1808749, at *1 (N.D. Cal. Aug. 5, 2002). Plaintiff's complaint in this case about his medical care advances a legally frivolous argument and fails to state a claim for relief under Section 1983.

IV.   EXCESSIVE FORCE

Severin complained that officers improperly used force against him during his three-day detention in the bus station. Specifically, he testified that he was pushed and struck in the face by an unknown officer whom he could not identify after Severin "got

26

emotional" and verbally confronted the officer.  Construed broadly, this testimony may assert a claim that detention officers used unconstitutionally excessive force against him.

Severin was a pretrial detainee at the time he was temporarily held at the bus station.  Thus, his claim that officers used excessive force against him is properly characterized as asserting a violation of his substantive due process rights under the Fourteenth Amendment.  Petta v. Rivera, 143 F.3d 895, 911 (5th Cir. 1998) ("[W]here a plaintiff's excessive force claim, whether he be a prisoner, arrestee, detainee, or an innocent bystander of tender years, falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment.") (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)); accord Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998).

Under the Fourteenth Amendment standard, the court must ask whether defendants' "actions caused [plaintiff] any injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that [they] amounted to an abuse of official power that shocks the conscience." Petta, 143 F.3d at 902 (citation omitted).  The "'extent of injury is one factor' to be considered [along] with 'the need for application of force, the relationship between that need and the amount of force used' and other factors, . . . [but] the extent of injury is only one relevant factor and cannot be exclusively determinative

27

under the . . . substantive due process approach."  Id. (quoting Hudson v. McMillian, 503

U.S. 1, 7 (1992)).

To the extent the Eighth Amendment standard applies, the appropriate inquiry is

"whether force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm."  Hudson, 503 U.S.

at 6; accord Petta, 143 F.3d at 901; Flowers v. Phelps, 956 F.2d 488, 491 (5th Cir. 1992).

Plaintiff need not show a significant injury to establish a constitutional violation;

however, the extent of the injury may be considered in determining whether the force

used was malicious, wanton or unnecessary.  Hudson, 503 U.S. at 7; Flowers, 956 F.2d

at 491.   In addition, "[t]he Eighth Amendment's prohibition of cruel and unusual

punishment excludes from constitutional recognition de minimis uses of physical force,

provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"

Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (quoting Hudson, 503 U.S. at 9-

10).

The law "require[s] a plaintiff asserting an excessive force claim to have suffered

at least some form of injury, . . . we do not permit a cause of action for every contact

between a citizen and a police officer.  In just about every conceivable situation, some

amount of force or contact would be too nominal to constitute a constitutional violation.

When the force used is insufficient to satisfy the legal standard necessary for recovery,

the amount of force is de minimis for constitutional purposes." <u>Williams v. Bramer</u>, 180 F.3d 699, 703 (5th Cir. 1999) (quotation omitted).  To determine whether injury caused by excessive force is more than de minimis for constitutional purposes, the context in which the force was used and all the surrounding circumstances must be examined.  <u>Id.</u>

Severin's written submissions and testimony fail to establish either a Fourteenth or an Eighth Amendment violation.  The force described by Severin, some pushing and one strike to the face, was reasonable force under the circumstances when Severin testified that he became "emotional" and verbally confronted the officers during the difficult, emergency circumstances that prompted use of the temporary detention facility after the hurricane.  Severin described no particular injuries suffered as a result of the minimal use of force he described, so that his injuries, if any, could not be characterized as anything more than de minimis.  At most, the force used by the deputies resulted in very minor injuries and was in no way malicious or sadistic.  In short, because the officers' physical contact with Severin was reasonable under the circumstances, plaintiff cannot establish the essential elements of his excessive force claim under Section 1983.

V.     QUALIFIED IMMUNITY

As to all claims asserted in this case under Section 1983, defendants are entitled to the defense of qualified immunity.  Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  Colston v. Barnhart, 130 F.3d 96, 98 (5th Cir. 1997); Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532-33 (5th Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A qualified immunity defense is analyzed under a two-step process.  Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000); Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998).  The first step is to determine whether plaintiff has alleged a violation of a clearly established constitutional right.  Jacobs, 228 F.3d at 393; Hare, 135 F.3d at 325.

The second step requires the court to determine whether defendant's conduct was objectively reasonable under existing clearly established law.  Jacobs, 228 F.3d at 393; Foster v. City of Lake Jackson, 28 F.3d 425, 429 (5th Cir. 1994).  In the absence of any allegation of a violation of a clearly established right, defendant is entitled to qualified immunity, and the court need not consider the second question.  Id. at 428-29.

For all of the reasons discussed above, Severin fails adequately to allege a violation of a clearly established constitutional right arising from his three-day detention at the temporary prison created in the aftermath of Hurricane Katrina.  In addition, however, defendants' alleged conduct in detaining Severin, a charged hurricane curfew violator who also was charged with (and later convicted of) possession of cocaine, in the hastily established and necessarily rough temporary detention facility, at a time when area jails, like almost everything else, had been damaged or closed down by the hurricane, was objectively reasonable.   The conditions Severin described were necessitated by the extraordinary emergency situation wrought by the storm and its effects.  At least as to Severin, defendants' conduct was objectively reasonable.

VI.   WRONGFUL CONFINEMENT

(A)   APPLICATION OF *HECK* TO SECTION 1983 CLAIMS

Severin alleges that his detention constituted wrongful confinement because the alleged Jefferson Parish attachment on the drug charge for which he was ultimately convicted had not actually been issued at the time of his arrest.  Whether plaintiff seeks injunctive relief or damages in connection with his "wrongful confinement" claim, this claim must be dismissed at this time pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement, which has not been reversed,

31

expunged, invalidated, or called into question by a federal court's issuance of a writ of

habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state tribunal authorized
> to make such determination, or called into question by a federal court's
> issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for
> damages bearing that relationship to a conviction or sentence that has <u>not</u>
> been so invalidated is not cognizable under § 1983.  Thus, when a state
> prisoner seeks damages in a § 1983 suit, the district court must consider
> whether a judgment in favor of the plaintiff would necessarily imply the
> invalidity of his conviction or sentence; if it would, the complaint must be
> dismissed unless the plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.

<u>Id.</u> at 486-87 (emphasis in original) (footnote omitted).  Although the Supreme Court's

decision in <u>Heck</u> concerned a civil action for monetary damages, the United States Court

of Appeals for the Fifth Circuit has also applied <u>Heck</u> in cases in which the plaintiff seeks

injunctive relief.  <u>Clarke v. Stalder</u>, 154 F.3d 186, 189 (5th Cir. 1998) (citing <u>Edwards</u>

<u>v. Balisok</u>, 520 U.S. 641 (1997)).

Plaintiff's claims are clearly connected to the validity of his conviction and past

confinement.  <u>Heck</u>, 512 U.S. at 479; <u>Hamilton v. Lyons</u>, 74 F.3d 99, 103 (5th Cir. 1997);

<u>Boyd v. Biggers</u>, 31 F.3d 279, 283 (5th Cir. 1994).  He alleges that his civil rights were

violated because he was held without any charge until the attachment issued in February 2006 and without any appearance before a court until his conviction in May 2006.

Plaintiff testified that he has been convicted of possession of cocaine. His conviction and sentence have not been set aside in any of the ways described in <u>Heck</u>. Thus, any claims for relief that he asserts concerning his conviction and past confinement are premature and must be dismissed. As the Fifth Circuit has noted, the dismissal of plaintiff's claims is with prejudice to their being asserted again until the <u>Heck</u> conditions are met. <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir. 1996).

(B)     <u>HABEAS CORPUS CLAIMS</u>

As noted above, plaintiff's complaint in part challenges the very fact and duration of his confinement in connection with his May 2006 drug conviction. Although his suit is styled as a civil rights action under 42 U.S.C. § 1983 and filed on a form normally reserved for Section 1983 complaints, he clearly challenges the validity of his conviction. This Section 1983 complaint is not the proper action in which to assert these habeas corpus claims.

A prisoner who challenges the very fact or duration of his conviction and physical confinement and who seeks judgment that would entitle him to release must pursue habeas corpus relief rather than civil rights relief under Section 1983. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973); <u>Clarke v. Stalder</u>, 121 F.3d 222, 226 (5th Cir.),

33

reh'g en banc granted & opin. vacated, 133 F.3d 940 (5th Cir. 1997), rev'd in part on other grounds & opin. reinstated in relevant part, 154 F.3d 186, 187 (5th Cir. 1998); Caldwell v. Line, 679 F.2d 494, 496 (5th Cir. 1982). Thus, although Severin filed his complaint on a form reserved for Section 1983 complaints, his action must be treated as a petition for habeas corpus relief because he seeks dismissal of all charges against him. Clarke, 121 F.3d at 226; Hernandez v. Spencer, 780 F.2d 504, 504 (5th Cir. 1986).

A fundamental prerequisite to federal habeas relief is the exhaustion of all claims in state court before requesting federal collateral relief. Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); Nobles v. Johnson, 127 F.3d 409, 419 (5th Cir. 1997). "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement. . . . This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." Id. (citing Picard, 404 U.S. at 275-78; Nobles,

127 F.3d at 420).  A court may notice sua sponte the lack of exhaustion.  McGee v. Estelle, 722 F.2d 1206, 1214 (5th Cir. 1984) (en banc).

In the present case, Severin does not allege and there is no proof that he has exhausted his state court remedies.  On the contrary, he indicates on the first page of his complaint that he has not begun any other lawsuits in state or federal court dealing with the same facts involved in this action.  Record Doc. No. 1, ¶ I (A).  He testified that he had not presented his claim of wrongful confinement to the Louisiana Supreme Court.

Clearly, plaintiff has not sought review of the validity of his pretrial detention in the Louisiana courts.  Accordingly, his instant petition for habeas corpus relief must be dismissed without prejudice to allow the state courts an opportunity to rule on the merits of plaintiff's unexhausted claims before returning to this court with a properly filed habeas corpus petition.

## **RECOMMENDATION**

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's claims be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), or under Heck.

**IT IS FURTHER RECOMMENDED** that all habeas corpus claims asserted in this Section 1983 complaint be **DISMISSED WITHOUT PREJUDICE** to plaintiff's ability to file a proper habeas corpus proceeding after exhaustion of state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __3rd__ day of May, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE